**UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Allstate Insurance Company, | |
| Plaintiff, | Case No. |
| v. | ***Jury Trial Demanded*** |
| Francine Moyer, | |
| Defendant. | |

<u>**VERIFIED COMPLAINT FOR INJUNCTIVE AND**</u>
<u>**OTHER RELIEF**</u>

Plaintiff Allstate Insurance Company ("Allstate"), by and through its undersigned attorneys, alleges as follows for its Complaint against Defendant Francine Moyer ("Moyer"):

<u>**NATURE OF THE ACTION**</u>

1.     This action is the result of Moyer failing to comply with certain promises she made and obligations she owes to Allstate.  Specifically, Moyer executed an "Allstate R3001S Exclusive Agency Agreement" ("Agreement") with Allstate on June 1, 2001 (attached as Exhibit A).  The Agreement allowed Moyer to sell, and receive monies from the sale of, Allstate products and services (jointly, "products"), to receive Allstate Confidential Information (defined below), and to receive compensation for the sale of Allstate products.

2.     Under her Agreement, Moyer agreed that, for one year following the termination of her relationship with Allstate, she would not solicit the purchase of products in competition with those sold by Allstate: (a) with respect to any person, company, or organization to whom Moyer, or anyone employed by Moyer's Agency, sold insurance or other products at Allstate; (b) with respect to any Allstate customer known by Moyer as a result of her or her Agency's access to Allstate Confidential Information; and (c)  from any office or business site located within one mile

1

of Moyer's Exclusive Allstate Agency ("Allstate Agency") location.

3.      The Agreement further required Moyer to acknowledge that she would be granted access to Allstate Confidential Information, that Allstate Confidential Information is the property of Allstate, and that she would not disclose Allstate Confidential Information to any third party or permit any third party to access Allstate Confidential Information.  Moyer also agreed to return all Allstate property, including Allstate Confidential Information, upon termination of her relationship with Allstate.

4.      Effective February 1, 2024, Moyer's Agreement and her relationship with Allstate terminated.

5.      Allstate recently learned that Moyer is now operating a competing insurance agency within one mile of her former Allstate Agency location.  She is also soliciting Allstate customers to terminate their relationships with Allstate and purchase competing insurance products from her competing agency, Moyer's Willow Street Insurance.

6.      Upon information and belief, Moyer's solicitations caused Allstate to lose a significant amount of customers.

7.      Worse yet, an internal Allstate investigation revealed that Moyer downloaded confidential Allstate customer information immediately before her Agreement terminated, and it is clear that she is using the stolen Allstate Confidential Information to solicit Allstate customers and illegally compete with Allstate.

8.      Moyer's actions are a clear violation of her Agreement and the law.  Consequently, Allstate now brings suit against Moyer for breaches of her Agreement, misappropriation of Allstate trade secrets, and tortious interference.  In doing so, Allstate requests that this Court enter an order enjoining Moyer from continuing her knowing and intentional breaches of her Agreement, and

award Allstate damages and attorneys' fees for Moyer's unlawful acts.

9.      More specifically, Allstate requests that this Court enter an order (1) enjoining Moyer, and anyone acting in concert with her, from soliciting Allstate customers who were customers of the Allstate Agency or customers whom Moyer knew about through her relationship with Allstate, (2) compelling Moyer to return all Allstate property, including all Allstate Confidential Information, in her custody, possession or control to Allstate, (3) enjoining Moyer and anyone acting in concert with her, from using, possessing, or accessing Allstate Confidential Information, (4) awarding Allstate compensatory and punitive damages for Moyer's intentional acts, and (5) awarding Allstate its reasonable attorneys' fees as provided for under the Agreement and the law.

## THE PARTIES AND RELEVANT PERSONS

10.      Allstate Insurance Company ("Allstate") is an Illinois corporation with its principal place of business located in Northbrook, Illinois.

11.      Francine Moyer ("Moyer") is a citizen of the State of Pennsylvania and, based upon information and belief, resides at 8 Fisher Terrace  in Willow Street, Pennsylvania.

## JURISDICTION AND VENUE

12.      This Court has subject matter jurisdiction over this dispute, pursuant to 28 U.S.C. § 1331, because Allstate's claims against Moyer under the Federal Defend Trade Secrets Act, 18 U.S.C. § 1833, *et seq.*, raise a Federal question.  Allstate's remaining claims fall within the Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, because the claims are so related to the Federal question that they form part of the same case or controversy.

13.      Alternatively, this Court has diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a), because this action and controversy is between citizens of different states and exceeds the value of

3

$75,000, exclusive of interest and costs.

14.     This Court has personal jurisdiction over Moyer because she is a citizen and resident of Pennsylvania.  Venue is proper in the United States District Court for the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1391(b), because Moyer resides in this District, a substantial part of the events giving rise to Allstate's claims occurred in this District, and the property Allstate seeks to be returned is located in this District.

## **BACKGROUND**

### **Allstate's Business and Hiring of Independent Agents**

15.     Allstate is one of the nation's leading providers of insurance products to individuals and businesses.  Among other things, Allstate provides automobile insurance, and property and casualty insurance, to individuals and businesses.

16.     In addition to providing these products directly, Allstate appoints independent exclusive agents ("Exclusive Agents"), through its Exclusive Agency Program, to sell Allstate products.

17.     Allstate rigorously screens its Exclusive Agents to ensure that the agents are qualified to represent and sell Allstate products, have the proper tools and facilities to analyze and meet customer needs, and can furnish customers with appropriate insurance solutions.

18.     Allstate expends substantial resources advertising, marketing, and promoting its products.

19.     The Exclusive Agents benefit directly and indirectly from Allstate's advertising, marketing and promotional efforts, as well as from Allstate's goodwill, reputation and name recognition.  These efforts and expenditures allow the Exclusive Agents to develop and cultivate customer accounts and relationships on behalf of Allstate.

4

20.     Allstate relies heavily upon repeat business and renewal of policies to maintain its competitive advantage in the highly competitive insurance industry.  Maintaining goodwill and a solid business reputation with its customers and insureds is a critical component of Allstate's success.  Indeed, because Allstate's business is a service business, the relationship that each Exclusive Agent has with Allstate customers is highly dependent on the attention and excellent service given to the customers on an ongoing basis, and the continued trust the customers place in Allstate as a leading provider of such services.

### Protection of Allstate Confidential Information

21.     Allstate and its customers entrust Allstate and its Exclusive Agents to safeguard and protect their information, which includes information relating to, among other things, their personal data, types of policies, amount of insurance, premium amounts, description and location of assets and property, claims histories, insurance needs, pricing information, and other insurance coverage information, from unauthorized use or disclosure.

22.     Allstate protects its information (described in the paragraph above) by, among other things: limiting the disclosure and use of this information to only the Exclusive Agent and the Agent's employees who need this information to sell Allstate products; educating the Exclusive Agents about the requirement and necessity of keeping this information confidential; restricting access to this information by limiting access to computer networks and requiring the use of passwords to access the information; and, as discussed above, requiring the Exclusive Agents to execute written agreements that protect against the misuse and improper disclosure of Allstate Confidential Information.  Indeed, Exclusive Agents do not have access to Allstate Confidential Information before executing their agreements with Allstate and only receive Allstate Confidential Information because they promise to a) keep the information confidential and b) only use Allstate

5

Confidential Information on behalf of Allstate.

23.     Consequently, all Exclusive Agents, pursuant to their agreements with Allstate and while performing services under their agreements, acknowledge that they will have access to Allstate Confidential Information, promise to not disclose Allstate Confidential Information to anyone not authorized to receive it, and confirm that they will not use Allstate Confidential Information for their own benefit or for any improper purpose.

24.     Exclusive Agents agree, upon termination of their relationship with Allstate, to continue treating Allstate Confidential Information as confidential, not disclose, either directly or indirectly, Allstate Confidential Information to any third party, and immediately return all Allstate Confidential Information to Allstate.

25.     Hence, Allstate's Confidential Information is not available to the general public and is closely guarded by Allstate.  Allstate keeps such information strictly confidential in order to protect its customers' privacy and to maintain a competitive advantage in the highly competitive insurance business.  Not surprisingly then, Exclusive Agents do not have access to Allstate Confidential Information before becoming affiliated with Allstate and only have access to Allstate Confidential Information because of their affiliation with Allstate and their promises to keep Allstate Confidential Information confidential.

**Moyer Enters into Her Agreement to Solicit and Sell Allstate Products**

26.     After proceeding through Allstate's rigorous screening process, Moyer became an Exclusive Allstate Agent on or about June 1, 2001. (See Agreement, Ex. A).

27.     As an Allstate Exclusive Agent, Moyer solicited potential and existing Allstate customers to purchase Allstate products, and service existing Allstate customers' needs, from her Allstate Agency location, 2819A Willow Street Pike North in Willow Street, Pennsylvania.

6

28.     As explained below, in consideration of Moyer's access to existing and potential Allstate customers and Allstate Confidential Information, Moyer, pursuant to the Agreement, agreed to protect Allstate Confidential Information and to abide by certain reasonable restrictive covenants.

29.     Under her Agreement, Moyer acknowledged that the following information is Allstate "confidential information" and property (referred to herein as "Confidential Information"):

> business plans of [Allstate]; information regarding the names, addresses, and ages of policyholders of [Allstate]; types of policies; amounts of insurance; premium amounts; the description and location of insured property; the expiration or renewal dates of policies; policyholder listings and any policyholder information subject to any privacy law; claim information; certain information and material identified by [Allstate] as confidential or information considered a trade secret as provided herein or by law; and any information concerning any matters affecting or relating to the pursuits of [Allstate] that is not otherwise lawfully available to the public.

(Ex. A, § IV(D).)

30.     Pursuant to Section IV(D) of the Agreement, Moyer agreed that she would not, at any time or in any manner, directly or indirectly, use Allstate Confidential Information for any purpose other than to carry out the provisions of the Agreement.  (Ex. A, § IV(D).)

31.     Pursuant to Sections IV(D) and XVIII(B) of the Agreement, Moyer acknowledged that all Confidential Information she was provided and had access to as an Allstate Exclusive Agent would at all times remain Allstate property and was to be returned to Allstate upon termination of the Agreement and her relationship with Allstate.  (Ex. A, §§ IV(D), XVIII(B).)

32.     Pursuant to Section XVIII(D)(1-3) of the Agreement, Moyer agreed that, for a period of one year following termination of the Agreement, she would not solicit the purchase of products competitive with those sold by Allstate:

- With respect to any person, company, or organization to whom [Moyer] or anyone acting on [Moyer's] behalf sold insurance or other products or services on behalf of [Allstate] and who is a customer of [Allstate] at the time of termination of the Agreement;

- With respect to any person, company, or organization who is a customer of [Allstate] at the time of termination of this Agreement and whose identity was discovered as a result of [Moyer's] status as a[n Allstate] agent or as a result of [Moyer's] access to [Allstate] Confidential Information[1]; or

- From any office or business site located within one mile of [Moyer's] Exclusive Allstate Agency] at the time the Agreement is terminated.

(Ex. A, § XVIII D(1-3).)

33.     Moyer recognized that a breach of any of the provisions in her Agreement would "cause irreparable damage to [Allstate's] business and that such damage will be difficult or impossible to measure."  (Ex. A, §§ IV(F), XVIII(F).)

34.     Accordingly, Moyer agreed that if she breached any of the obligations under the Agreement, then Allstate would be "entitled to an order granting injunctive relief from any court of competent jurisdiction," in addition to other rights and remedies.  (*Id.*)

35.     Moyer also agreed that Allstate would be "entitled to an award of reasonable attorneys' fees in the event that [Allstate] is successful in an application for injunctive relief or in an action based upon the breach" of any of the terms set forth in the Agreement.  (*Id.*)

**Moyer Breaches Her Agreement With Allstate**

36.      Pursuant to her Agreement, Moyer agreed that, after her relationship with Allstate terminated, she would: (a) immediately return all Allstate Confidential Information to Allstate; (b) not solicit Allstate customers for one year; and (c) not solicit the sale of products that compete with Allstate from any location that is within one mile of her Allstate Agency location.

---

[1] The Allstate customers identified in paragraph 32 are collectively referred to as "Allstate customers."

37.     Moyer's Agreement and her relationship with Allstate terminated on February 1, 2024.

38.     As a result, Moyer was required to return all Allstate Confidential Information to Allstate by February 1, 2024.

39.     Naturally, she was also prohibited from using, possessing, or accessing Allstate Confidential Information after February 1, 2024.

40.     Similarly, Moyer is prohibited from soliciting Allstate customers or working for a competing insurance agency within one mile of her former Allstate Agency until after February 1, 2025.

41.     Unfortunately, Moyer is ignoring her post-termination obligations in several different ways.

42.     *First*, Moyer retained Allstate Confidential Information after February 1, 2024.

43.     Specifically, immediately before her termination, Moyer downloaded Allstate Confidential Information, including a customer list containing customer information.

44.     Moyer had no reason or legal basis for downloading the confidential Allstate customer information in the days before the Moyer Agreement terminated.

45.     Indeed, the only reason or basis for downloading and retaining Allstate Confidential Information after the Moyer Agreement terminated is to use the information to solicit Allstate customers on behalf of herself and her new insurance agency.

46.     Hence, Moyer downloaded and retained Allstate Confidential Information after the Moyer Agreement terminated in order to use the information to solicit Allstate customers on behalf of herself and her new insurance agency.

47.     *Second*, Moyer is actively soliciting Allstate customers.  Based upon information

and belief, Moyer is using the downloaded and stolen Allstate Confidential Information to facilitate these solicitations.

48.     Moyer's solicitations of Allstate customers and violations of her Agreement have been brazen.  Specifically, and upon information and belief, Moyer is soliciting Allstate customers by phone, email, and in person to purchase products that compete with Allstate products.

49.     Not surprisingly then, since Allstate terminated its relationship with Moyer, Allstate customers terminated their Allstate products and, upon information and belief, purchased competing products through Moyer.

50.     **Third**, Moyer is operating a competing insurance agency within one mile of 2819A Willow Street Pike North, her former Allstate Agency location.

51.     Moyer's competitive insurance agency, "Moyer's Willow Street Insurance," is now located in the same strip mall as her former Exclusive Allstate Agency.  Moyer's Willow Street Insurance has an address of 2819B Willow Street Park North, which is within one mile of her former Allstate Agency location.

52.     In fact, Moyer posted on her Facebook page that she had "retired from Allstate" and stated she would be working at Moyer's Willow Street Insurance Agency.  In the post, she encouraged the reader to "[g]ive [her] a call."  (A copy of the Facebook post is attached as Exhibit B.)

53.     On or around March 19, 2024, Allstate sent Moyer a letter demanding that she (a) immediately stop soliciting Allstate customers, (b) immediately stop competing with Allstate from within one mile of her Allstate Agency location, (c) immediately stop using and return any Allstate Confidential Information in her possession, custody or control, and (d) affirm in writing that he will comply with the duties and obligations he still owes Allstate.  (A copy of Allstate's March 19,

2024 letter is attached as Exhibit C.)

54.    Unfortunately, and at this time, Moyer refuses to stop soliciting Allstate customers and selling products that compete with Allstate from within one mile of her Allstate Agency location, 2819A Willow Street Pike North.

55.    Moyer also refuses to return Allstate Confidential Information to Allstate.

56.    Put another way, Moyer is ignoring the duties and obligation she owes Allstate. She is also ignoring the duties and obligations she owes Allstate under the law.

**Irreparable Harm to Allstate**

57.    Moyer is harming Allstate's legitimate business interests, including its goodwill and customer relationships, by soliciting Allstate customers and offering insurance products competitive to those offered by Allstate from a location within one mile of her former Allstate Agency location.

58.    For example, many existing Allstate customers of Moyer's former Allstate Agency that were serviced or communicated with Moyer may pass directly by, or come into the same strip mall as her former Allstate Agency location, and see Moyer.   Moyer can then solicit the Allstate customers to leave Allstate and become customers of her new insurance agency (i.e. an Allstate competitor).

59.    Additionally, Moyer is still in possession of Allstate Confidential Information, and the only reason for Moyer to possess Allstate Confidential Information is to use Allstate Confidential Information on behalf of herself or her new insurance agency.

60.    Consequently, it is both probable and imminent that an existing or prospective customer may purchase insurance products from Moyer instead of from Allstate.

61.    It is also both probable and imminent that Allstate's Confidential Information is at

significant risk and exposure.

62.     Injury to Allstate is therefore both probable and imminent because Moyer clearly intends to continue violating her Agreement and using Allstate Confidential Information.

63.     Accordingly, Allstate is suffering irreparable harm, and injunctive relief is necessary and appropriate to prevent further damage to Allstate.

## COUNT I
### (Breach of Contract)

64.     Allstate repeats and realleges each and every allegation contained in paragraphs 1 through 63 of the Complaint, as if fully set forth herein.

65.     On June 1, 2001, Moyer entered into her Agreement with Allstate.  (Ex. A).

66.     The Agreement is a valid and enforceable contract.

67.     Under the Agreement, Moyer promised, for a period of one year following the termination of the Agreement, to not solicit the purchase of products competitive with those sold by Allstate (a) to any Allstate customer or (b) from any location within one mile of the Allstate Agency.

68.     Under the Agreement, Moyer promised, upon termination of the Agreement, to immediately return all Allstate Confidential Information and property to Allstate.

69.     Under the Agreement, Moyer further promised to not use Allstate Confidential Information for any purpose other than carrying out the provisions of the Agreement.

70.     The post-termination covenants found in the Agreement are reasonable in scope and duration and are necessary to protect Allstate's legitimate business interests in its Confidential Information, goodwill, and longstanding customer relationships.

71.     Allstate has performed all of the duties and obligations it owes Moyer under the Agreement.

72.     Moyer breached the Agreement, and continues to breach the Agreement, by, among other things, soliciting Allstate customers and soliciting the purchase of competing insurance products from within one mile of her former Allstate Agency location.

73.     Moyer breached the Agreement, and continues to breach the Agreement, by, among other things, retaining and using Allstate Confidential Information.

74.     Moyer breached the Agreement, and continues to breach the Agreement, by, among other things, downloading and stealing Allstate Confidential Information to assist in solicitations of Allstate customers.

75.     Moyer also breached the Agreement by transferring Allstate customers and policies out of Allstate and to an Allstate competitor.

76.     Allstate has incurred significant damage as a result of Moyer's breaches of the Agreement.  Moyer's illegal solicitations and actions damaged and are continuing to damage Allstate's goodwill and customer relationships.  Allstate's damages are in excess of $75,000.00.

77.     Moreover, Moyer's breaches of the Agreement are continuing.  Allstate is therefore subject to continuing irreparable harm, economic injury, and damage to its goodwill and customer relationships.

78.     Allstate has no adequate remedy at law and, unless injunctive relief is granted, Allstate will continue to be irreparably harmed by Moyer's breach of her Agreement in a manner that is not fully compensable by money damages.

79.     Allstate therefore requests that this Court grant injunctive relief against Moyer that prohibits Moyer from (a) soliciting Allstate customers; (b) competing against Allstate within one mile of her former Allstate Agency location; and (c) using, accessing, or possessing Allstate Confidential Information.

80.     Allstate further requests that this Court order Moyer to immediately return all Allstate property in the custody, possession, or control of Moyer, including Allstate Confidential Information, to Allstate.

81.     Finally, Allstate is entitled to recover the attorneys' fees and costs Allstate incurs as a result of Moyer's breaches of the Agreement.

## COUNT II
**(Misappropriation of Trade Secrets – Pennsylvania Trade Secrets Act)**

82.     Allstate repeats and re-alleges each and every allegation contained in paragraphs 1 through 81 of the Complaint, as if fully set forth herein.

83.     During the course of her relationship with Allstate, Moyer was exposed to substantial amounts of Allstate Confidential Information.

84.     For instance, Moyer had access to: Allstate business plans; information regarding the names, addresses, and ages of policyholders or prospective policyholders of Allstate; types of policies; amounts of insurance; premium amounts; the description and location of insured property; the expiration or renewal dates of policies; policyholder listings; policyholder information that is subject to privacy law; and claim information.

85.     The information identified in paragraphs 21, 29, and 84 is not available to the general public and is closely guarded by Allstate.  Allstate keeps such information strictly confidential in order to protect its customers' privacy and to maintain an advantage in the highly competitive insurance business.

86.     This information is considered a trade secret under the Pennsylvania Uniform Trade Secrets Act ("PTSA"),  12 P.S. § 5302 *et seq*., because Allstate derives independent economic value from this information not being generally known to the public, the information is not readily ascertainable by proper means by persons who could obtain economic value from its disclosure or

use, and the information is the subject of reasonable efforts to maintain its secrecy.

87.     The economic value of the Allstate trade secrets/confidential information Moyer had access to under the Agreement is over $500,000.

88.     Under the PTSA, "actual or threatened misappropriation [of trade secrets] may be enjoined."

89.     Moyer is misappropriating Allstate trade secrets by refusing to return Allstate property, including Allstate Confidential Information, and using that information to solicit Allstate customers.

90.     Upon information and belief, Moyer's refusal to return Allstate property, including Allstate Confidential Information, constitutes the "threatened" misuse of Allstate trade secrets and injunctive relief is therefore appropriate.

91.     Accordingly, Allstate requests that this Court enter an order enjoining Moyer from using any Allstate Confidential Information, and from disclosing Allstate Confidential Information to anyone not authorized to receive the Confidential Information.

92.     Allstate also requests that this Court enter an order requiring Moyer to return any and all Allstate Confidential Information to Allstate, as she is required to do pursuant to the Agreement and the PTSA.

93.     In addition, Moyer's actions have damaged Allstate's goodwill, reputation, and legitimate business interests.

94.     Allstate is therefore entitled to compensatory and exemplary damages in an amount to be proven at trial, as well as reasonable attorneys' fees.

95.     Finally, Moyer's misappropriation of Allstate's trade secrets was willful and malicious.

96.     Allstate therefore requests an award of compensatory damages, exemplary damages, and reasonable attorneys' fees as a result of Moyer's willful and malicious misappropriation of Allstate trade secrets.

**Count III**
**(Violation of Federal Defend Trade Secrets Act)**

97.     Allstate repeats and realleges paragraphs 1 through 96 of the Complaint, as if fully set forth herein.

98.     During the course of her relationship with Allstate, Moyer was provided access to substantial amounts of Allstate Confidential Information, including the Confidential Information identified in paragraphs 21, 29, and 84.

99.     Allstate Confidential Information is not available to the general public and is closely guarded by Allstate. Allstate keeps such information strictly confidential in order to maintain a competitive advantage over competitors.

100.    Allstate Confidential Information is considered a trade secret under the Defend Trade Secrets Act, 18 U.S.C. § 1833, *et seq.* ("DTSA"), because the information is not generally known outside of Allstate's business, the information is not generally known by employees and others involved in Allstate's business, Allstate has taken reasonable measures to guard the secrecy of the information, the information is of great value to Allstate and its competitors, Allstate invested significant amounts of time and money in developing the information, the information cannot easily be acquired or duplicated by others, and because Allstate continuously uses the information in its business.

101.    Moyer has contractual obligations to return Allstate Confidential Information to Allstate immediately upon termination of her Agreement.

102.    Moyer, however, ignored (and continues to ignore) her contractual obligations by

maintaining possession of Allstate Confidential Information, using that Confidential Information to unfairly compete with Allstate, and passing that Confidential Information along to third parties who are not authorized to receive, possess, or access Allstate Confidential Information.

103.   Unless restrained, Moyer will continue to use, divulge, disclose, acquire and/or otherwise misappropriate Allstate Confidential Information.

104.   Furthermore, actual or threatened misappropriation of confidential information may be enjoined under the DTSA.

105.   It is axiomatic that if Moyer is actively using Allstate Confidential Information and ignoring the terms of the Agreement, then Moyer has no intention of complying with the DTSA.

106.   Consequently, Moyer's actions constitute the actual and/or threatened misuse of Allstate Confidential Information.  Injunctive relief against Moyer is therefore appropriate.

107.   Naturally then, Allstate requests an order enjoining Moyer from using Allstate Confidential Information and from disclosing Allstate Confidential Information to anyone not authorized to receive the Confidential Information.

108.   Allstate further requests an order requiring Moyer to return any and all Allstate Confidential Information to Allstate.

109.   Finally, Moyer's misappropriation of Allstate Confidential Information has been willful and malicious, and Allstate has incurred significant damages as a result of Moyer's misappropriation.

110.   Moyer's actions have also damaged Allstate's good will, reputation, and legitimate business interests.

111.   Allstate is therefore entitled to recover not only compensatory damages, but also punitive damages and attorneys' fees resulting from Moyer's wrongfully misappropriation of

Allstate Confidential Information.

### **COUNT IV**
### **(Tortious Interference)**

112.    Allstate repeats and realleges each and every allegation contained in paragraphs 1 through 111 of the Complaint, as if fully set forth herein.

113.    Moyer was and is aware of the contractual relationship between Allstate and Allstate's customers, as well as Allstate's expectancy in developing relationships with potential customers.

114.    Moyer knew and understood that Allstate's contractual relationship with its customers would continue after Moyer's Agreement terminated.

115.    Pursuant to her Agreement, Moyer was obligated not to solicit or otherwise interfere with Allstate's customer relationships for a period of one year after the termination of her Agreement.

116.    Nevertheless, Moyer solicited Allstate customers after her Agreement terminated in order to have Allstate customers terminate their relationships with Allstate.

117.    Hence, Moyer knowingly, intentionally, willfully, and maliciously interfered with Allstate's customer relationships within a year from her termination.

118.    Moyer's conduct was not privileged or justified.

119.    Allstate has incurred significant damages as a result of Moyer's interference with Allstate's contractual relationships.  Allstate has suffered the loss of customers and potential customers.  Moyer's actions have also damaged Allstate's goodwill, reputation, and legitimate business interests.

120.    As a direct and proximate result of Moyer's tortious interference, Allstate has been damaged in an amount to be determined at trial, and is entitled to the recovery of punitive damages

as well.

121.     Allstate demands trial by Jury.

## COUNT V
### (Replevin - 231 Pa. Code § 1071 *et seq*.)

122.     Allstate repeats and realleges paragraphs 1 through 121 of the Complaint, as if fully set forth herein.

123.     All acts complained of herein occurred within Lancaster County, Pennsylvania.

124.     Allstate owns certain property, including the Confidential Information identified in paragraphs 21, 29, and 84.  At all times relevant herein, Allstate is and was entitled to possession of said property.

125.     The value of the Allstate Confidential Information exceeds $75,000.

126.     Between February 21, 2024 and the present, Moyer wrongfully deprived Allstate of possession of the property, including the Confidential Information identified in paragraphs 21, 29, and 84, owned by Allstate.

127.     On or about March 19, 2024, Allstate made a demand on Moyer for the immediate return of that property.

128.     Despite Allstate's demand, Moyer refused, and continues to refuse, to return Allstate's property.

129.     Moyer has wrongfully deprived, and continue to wrongfully deprive, Allstate of possession of its property.  As a result of the wrongful detention of Allstate's property by Moyer, Allstate has suffered damages in an amount to be proved at trial.

130.     Allstate is lawfully entitled to the possession of its property, including the Confidential Information identified in paragraphs 21, 29, and 84.

131.     This cause of action originated within one year.

**WHEREFORE**, Plaintiff Allstate Insurance Company respectfully requests that this Court:

1.     Enter an injunction enjoining and restraining Francine Moyer, and her agents, representatives, associates, employees, and all those acting in concert or participation with her, from:

      (a)     soliciting the purchase of insurance products competitive to those offered by Allstate from any person Moyer serviced or knew of through her relationship with Allstate;

      (b)     using any Allstate Confidential Information for her own benefit and from disclosing Allstate Confidential Information to anyone not authorized to receive the information; and

      (c)     selling products that compete with Allstate products from within one mile of her former Allstate Agency location.

2.     Enter an order requiring Moyer to return all Allstate Confidential Information and property in her possession, custody or control to Allstate;

3.     Enter judgment against Moyer for compensatory damages in an amount to be determined at trial;

4.     Award Allstate the costs and expenses, including reasonable attorneys' fees, Allstate incurs as a result of Moyer' breach of the Agreement;

5.     Award Allstate the costs and expenses, including reasonable attorneys' fees, Allstate incurs as a result of Moyer's violation of the Pennsylvania Trade Secrets Act and Federal Defend Trade Secrets Act;

6.     Award Allstate punitive damages resulting from Moyer's intentional, willful, and wanton violation of the Federal Defend Trade Secrets and Pennsylvania Trade Secrets Act; and

7.     Award Allstate such other relief as the Court may deem just and proper.

Dated:  May 1, 2024

Respectfully submitted,

*/s/ Noelle B. Torrice*
NOELLE B. TORRICE (PA 317928)
**Benesch, Friedlander, Coplan & Aronoff LLP**
1313 North Market Street, Suite 1201
Wilmington, DE 19801-6103
Telephone: (302) 442 7010
Email: ntorrice@beneschlaw.com

J. SCOTT HUMPHREY (*pro hac vice* forthcoming)
KATIE M. BURNETT (*pro hac vice* forthcoming)
**Benesch, Friedlander, Coplan & Aronoff LLP**
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606-4637
Telephone:  312.212.4949
Email: shumphrey@beneschlaw.com
kburnett@beneschlaw.com

*Attorneys for Plaintiff Allstate Insurance Company*

## <u>VERIFICATION</u>

Pursuant to 28 U.S.C. § 1746, I, Dan Mattingly, on behalf of Plaintiff Allstate Insurance

Company, verify under penalty of perjury that the foregoing statements in the Verified

Complaint are true and correct to the best of my knowledge, information, and belief.

_____
Dan Mattingly

Dated: April 29, 2024